*557 OPINION OF THE COURT
Howard Berler, J.
The trial of this action took place on January 27, 28 and 29, 1998. After an inquest on the first day thereof, plaintiff was awarded a divorce on the ground of constructive abandonment. On January 28, 1998, the parties entered into a stipulation regarding all custody and visitation issues. Left for the court to resolve were issues of financial support and distribution of marital property.
It appears that the parties were married on September 17, 1988, in a religious ceremony. There are two infant issue of the marriage, to wit: Barry Michael Bistrian, born on March 12, 1988, and Brett Carmine Bistrian, born on May 7, 1991. This divorce action was commenced on or about September 1, 1995.
It appears that defendant father is a laborer who is employed by the Bistrian Gravel Corp. and the Bistrian Cement Corp. Both are family businesses. Although he is called upon to do general labor, he does specialize in the formation of pre-cast cement structures. Although he stated that he did not know his exact salary, his tax returns show earnings of $56,000 in 1994, $54,841 in 1995 and $44,986 in 1996. His current gross income is $981 per week with a net of $681 weekly. Although work was available, he claimed he took 10 or 11 weeks off in 1996 because the pressure of this divorce action started to overwhelm him and he needed time to compose himself. To this end, he sojourned to California where he claims he stayed with friends at no cost and this accounted for reduced earnings in 1996. He admitted to receiving periodic raises and bonuses during the marriage, but that subsequent to the commencement of this action, no raises or bonuses were forthcoming. The court found defendant to be somewhat evasive and condescending on the issue of his earnings. Additionally, defendant could not explain why he did not receive raises or Christmas bonuses subsequent to the commencement of this divorce action. Based upon the foregoing, for purposes of the Child Support Standards Act (Domestic Relations Law § 240 [1-b]), the court will ascribe a basic gross income of $56,000 which includes a customary bonus of $2,500.
With regard to plaintiff wife, it appears that during the parties’ nine-year marriage she had been sporadically engaged in various money-making ventures or employments, primarily in the field of physical fitness instruction. She is not currently employed but, rather, is studying massage therapy at New *558 World College in Syosset, New York. She expects to graduate in the year 2000 and sit for an examination which, if successful, will enable her to attain a license to practice this trade. She attends school two days per week and all other times is actively engaged in raising her children as well as her studying. Accordingly, the court will ascribe no income to her now.
The next issue regarding child support involves imputation of income. Domestic Relations Law § 240 (1-b) (b) (5) (iv) provides that, at the discretion of the court, the court may attribute or impute income from such other resources as may be available to the parent, including, but not limited to:
“(B) * * * lodging * * * automobiles or other perquisites * * * which expenditures directly or indirectly confer personal economic benefits * * *
“(D) money, goods, or services provided by relatives and friends”.
Here, the testimony revealed that both parties are subsidized by the largess of their respective parents.
Defendant testified that he lives with his parents and pays no expenses for the following: mortgage, real estate taxes, rent, utilities, telephone, garbage collection, water, electricity, commutation, parking, home repairs, pest control, prescription drugs, laundry, appliances, vacations and insurance. Defendant also testified to substantial lump-sum payments received from his parents over the past few years to assist in his support. He does admit to having expenses for doctors and dentists, household expenses, charitable contributions, Christmas presents, entertainment and miscellaneous. Defendant also admitted to unlimited access to the fuel pump at defendant’s employer’s grounds. Additionally, it appears that defendant has frequent use of his employer’s yellow pickup truck which he uses for both commutation and personal pursuits.
Additionally, during or about May 1996, he purchased a recreational vehicle for the total sum of $5,600, paying $2,000 down and financing the balance of $3,600 with the proceeds of a loan in this amount at $229.68 per month for 18 months. Also, he purchased several safety helmets at a cost of $100 per helmet, two chest protectors, goggles and gloves.
Plaintiff wife, as noted before, is currently studying massage therapy and will finish same in the year 2000. To finance this endeavor, she has taken out a student loan. She is currently residing in Amagansett, New York, in a house owned by her *559 father. She is not paying rent and is being subsidized by her mother to the extent of $200 per week. In addition, plaintiffs parents pay for the following: car insurance, gasoline ($35 weekly), automobile repairs, children’s clothing (at a yearly cost of $2,000), dental costs for herself and her children, therapy for children (at a weekly cost of $170), tutorial expenses (at a weekly cost of $65) and entertainment. Additionally, each party’s parents fund the cost of summer camp for one of the boys. Additionally, she borrowed a sum of money for her attorneys legal fees. As noted above, she has never worked full time during the marriage and the court finds that because of her course of studies and her obligations with reference to the children, she should not be required to do so now.
 The net result is that both parties are benefitting from the largess of their respective families. Both are living in a residence free of monthly maintenance or rental charges. The court has already delineated the expenses that plaintiffs mother pays for and they are substantial, as are those expenses paid by defendant’s parents for his behalf in addition to substantial lump-sum cash contributions. Accordingly, the court will not impute additional income vis-a-vis household living expenses. In essence, as a result of parental assistance, the court considers each partys good fortune regarding living expenses to obviate the need to impute income in this regard to either party. The court has no reason to anticipate that such assistance will cease. The court will, however, attribute to defendant as income the sum of $7,500 per year, for automobile expenses, computed as follows:
(A) $3,000 (based on average auto loan of $250/month);
(B) $2,400 (based on average auto insurance at $200/month);
(C) $1,300 (based on average automobile fuel expenses of $25/week);
(D) $800 (based on average maintenance expenses of $66.67/month).
An additional issue concerning the proper child support amount is the allegation as to whether defendant derived additional income through the farming of pumpkins. Said pumpkins were farmed on two parcels of property owned by defendant’s grandfather, for which, in 1994, he paid rent in the sum of $2,500 for the season. One such parcel consists of 127 acres. Farming activities took place in 1994, 1995 and 1997. *560 Plaintiff testified that this venture was an all-cash enterprise with the proceeds simply being placed in a box at the farm stand. Plaintiff testified that approximately $12,000 cash was placed in a safe under the control of plaintiffs father, Carmine DiSunno. Defendant, however, claims that he derived no income from farming and refused to testify with respect to the . funds in the safe on the ground of the Fifth Amendment of the United States Constitution. Therefore, the court imputes additional income in the sum of $15,000, given plaintiff’s testimony at trial that this was an all-cash enterprise, that in 1994 they earned $22,000, and that throughout the trial defendant was evasive and sometimes sarcastic in answering questions propounded to him, and that she worked at the farm stand on occasion and observed the sale of pumpkins; having allowed $7,000 for expenses after finding gross sales to be $22,000. Accordingly, the court computes defendant’s child support obligation as follows:
Defendant Plaintiff
Gross Salary $56,000 $ 0
Proceeds from Pumpkin Sales 15,000 0
Imputed Income (Free use of vehicle) 7,500 0
$78,500
$ 0
Total Income $78,500
Less Alimony Awarded Herein 5,200
$73,300
Less F.I.C.A. 4,240
$69,060 x 25%
$17,265 Yearly Child Support Obligation
or $ 332.02 Per Week
As noted above, the court also awards plaintiff maintenance in the sum of $100 per week for a period of three years, commencing with the first Friday after the date of this decision. *561 This termination date should afford ample time after completion of her studies to obtain substantial employment to provide for her maintenance and repayment of the student loan. At the termination of this maintenance obligation, defendant shall pay, as and for child support, the additional sum of $25 per week making a total of $357.02 per week.
Defendant is further directed to continue to maintain any policies of health, medical and dental insurance he or the business enterprises he is affiliated with maintains for the benefit of his children. If same is no longer in effect, or is terminated for any reason, he is directed to immediately procure comparable policies. In addition, defendant is directed to maintain all life insurance policies in effect at the time of the maintenance of this action. Said policy shall designate plaintiff as trustee with the two infant issue of the marriage as beneficiaries. The obligation to maintain this policy shall expire when the youngest child herein attains the age of 21 or sooner becomes emancipated.
The remaining issue concerns the equitable distribution of two items, to wit: (1) IRA in the sum of $23,847 +; and (2) cash in safe-deposit box.
It appears that this IRA was created during the marriage and there was no testimony that all or a portion of this amount was either party’s separate property. Accordingly, plaintiff’s attorney shall submit a Qualified Domestic Relations Order which directs the equal division of the current value thereof.
With regard to the sum of money that was placed in plaintiff’s father’s (Carmine DiSunno) safe-deposit box and which, apparently, has been liquidated, the court finds the sum in question to be as Mr. DiSunno testified, the sum of $10,500, as he was more likely to be aware of the amount thereof. Therefore, plaintiff is awarded a distributive award in the sum of $5,250, payable within 30 days after service of a copy of the judgment entered herein.
The court would be remiss if it did not note the professional manner in which both counsel conducted themselves during the trial of this action.